IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JAY JURGENS,** | Case No. 3:14-CV-00096-SU |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS** |
| v. | |
| **CAROLYN W. COLVIN,** Commissioner of Social Security, | |
| Defendant. | |

SULLIVAN, Magistrate Judge:

    Jay Jurgens ("plaintiff") brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner denied plaintiff's application for Title II disability insurance benefits ("DIB") under the Act. For the reasons set forth below, the Commissioner's decision should be affirmed.

## PROCEDURAL BACKGROUND

On January 2, 2012, plaintiff filed a Title II application for DIB, alleging a disability onset date of July 1, 2010, with a date last insured ("DLI") of December 31, 2010. Tr. 18, 130–31. After the application was denied initially and upon reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"). Tr. 18, 74–75. On June 11, 2013, an ALJ hearing was held at which plaintiff and plaintiff's wife, Nancy Jurgens, testified; plaintiff was represented by counsel. Tr. 18, 27–44. A vocational expert ("VE") also appeared at the hearing. Tr. 18, 30. On June 27, 2013, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 18–22. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1–3. Thereafter, plaintiff filed an appeal in this Court.

## FACTUAL BACKGROUND

Born on May 20, 1952, plaintiff was 58 years old on the alleged onset date and the DLI and was 61 years old at the time of the hearing. Tr. 45. Plaintiff graduated from high school and completed one year of college. Tr. 195. Plaintiff has past relevant work experience as a construction contractor. Tr. 195. He alleges disability beginning July 1, 2010, due to dementia, high blood pressure, depression, and arthritis. Tr. 45, 194.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to

preclude substantial gainful activity." *Id.*; 20 C.F.R. § 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. § 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.966.

## THE ALJ'S FINDINGS

At step one of the sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of July 1, 2010, through his DLI of December 31, 2010. Tr. 20. At step two, the ALJ determined "[t]hrough the date last insured, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." Tr. 20–21 (citation omitted). The ALJ therefore did not go on to evaluate the remaining steps; rather, based on his step-two finding, the ALJ determined that plaintiff was not disabled within the meaning of the Act and, accordingly, was not entitled to benefits. Tr. 22.

## DISCUSSION

Plaintiff argues the ALJ erred by (1) failing to address plaintiff's treating neurologist's

opinion that plaintiff's dementia began in 2008; (2) discrediting plaintiff's wife's testimony without providing a germane reason; and (3) failing to obtain the testimony of a medical expert to determine the onset date of plaintiff's alleged mental impairments in violation of Social Security Ruling ("SSR") 83-20. Defendant, in turn, argues substantial evidence supports the ALJ's finding that plaintiff did not have a medically determinable impairment on or before the DLI and, as a result, SSR 83-20 does not apply and there was no error.

I.  Treating Neurologist Dr. Norman R. Freeman, M.D.

Plaintiff first argues the ALJ erroneously ignored the opinion of treating neurologist Dr. Norman R. Freeman, M.D. An ALJ is required to evaluate every medical opinion in the record. 20 C.F.R. § 404.1527(c). There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so. *Bayliss v.. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830–31). However, if a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Id.* In either instance, the ALJ is not required to accept an opinion that is brief, conclusory, or not supported by clinical findings. *Id.* (citation omitted).

Dr. Freeman first treated plaintiff on January 30, 2013, approximately two years after the DLI of December 31, 2010. Tr. 306–11. Dr. Freeman noted plaintiff's

> [s]ymptoms began in 2008. The patient's wife recalls that in the spring of that year the patient's daughter (her stepdaughter) passed away, and this threw them both into a deep depression. In the fall that year the patient was at work 1 day when his body felt very strange, and he thought he might pass out.

Page 5 - FINDINGS AND RECOMMENDATION

Tr. 307. He wrote further that plaintiff's wife "feels that it was soon after that episode, coincidence or not, that he began to change cognitively and behaviorally." *Id.* Dr. Freeman also wrote plaintiff "has experienced a gradually increasing dementing process since 2008." Tr. 309. The ALJ gave little weight to Dr. Freeman's notes from January 2013 because they were "based entirely on the reports of the claimant and his spouse. There is no medical evidence prior to July 2011." Tr. 21 (citation omitted). This is a valid reason, supported by substantial evidence, for giving Dr. Freeman's January 2013 notes little weight. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007); *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)) (claimant must prove underlying impairment with objective medical evidence in order for ALJ to consider symptom testimony).

Dr. Freeman treated plaintiff again on April 29, 2013. Tr. 319–23. In treatment notes from this visit, Dr. Freeman opined, "Considering the severity of his dementia at this point, and considering the probable etiologies, I think that we can say with a high degree of medical certainty that the dementia process began at least 5 years ago." Tr. 320. The ALJ did not discuss or analyze the April 2013 visit, or Dr. Freeman's opinion that resulted from it.

Defendant concedes the ALJ did not address Dr. Freeman's April 2013 opinion but argues it was sufficiently similar to the January 2013 statements that the ALJ adequately addressed it when he addressed the January 2013 statements. Def.'s Br. 10. The April 2013 opinion differs from the notes made in January 2013 as it indicates it is based on Dr. Freeman's medical assessment of the severity of plaintiff's condition in 2013 and the condition's probable etiologies. Tr. 320. However, it is clear from the record that there were no "medical signs or laboratory findings to substantiate the existence of a medically determinable impairment" prior to 2011. Tr. 20-21.

Defendant contends the dearth of medical evidence prior to July 2011 is a valid reason to discredit Dr. Freeman's April 2013 opinion. Def.'s Br. 10 (citing *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995)).

The Commissioner determines at step two whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 416.920(c). The severity determination at step two of the sequential evaluation requires a determination that (1) the impairment results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques; and (2) the severity must be such that it significantly decreases the physical or mental ability of a person to perform basic work activities. 20 C.F.R. §§ 404.1508, 404.1520. The impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." *Id.* at § 404.1508 (citation omitted). The two-step analysis is a "de minimis screening device to dispose of groundless claims," and requires the ALJ to consider the combined effect of all of the claimant's impairments, regardless of whether each impairment alone was sufficiently severe. *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001). "In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process . . . ." SSR 96-4p, 61 Fed. Reg. 34488-01, 34489 (July 2, 1996). Further, "[n]o symptom or combination of symptoms by itself can constitute a medically determinable impairment." *Id.*

Here, there is no medical evidence consisting of signs, symptoms or laboratory findings prior to 2011 to substantiate Dr. Freeman's 2013 opinions and the error, if any, in failing to discuss his April 2013 was harmless.

II.   Lay Witness Testimony

On June 10, 2013, Ms. Jurgens signed a written statement regarding plaintiff's symptoms. Tr. 230–31. She stated, "In 2008, I began to notice significant changes in [plaintiff]'s personality. He was easily confused, forgetful and started to isolate." Tr. 230. She stated plaintiff "seemed to almost give up on life . . . [: h]e did not want to go anywhere" and "was becoming a recluse because he was embarrassed by his diminished mental abilities." *Id.* She also wrote plaintiff "became unable to make the simplest day to day decisions, such as whether or not he wanted cheese on his hamburger." Tr. 231. Regarding plaintiff's cognitive problems, Ms. Jurgens wrote plaintiff was "unable to focus, concentrate and have the ability to think about what to [do] next." Tr. 230. She recounted an incident when plaintiff "found a saw, pushed the button to turn it on and could not figure out why [it] did not work. I told him it had to be plugged in." *Id.* She wrote that plaintiff "mix[ed] up events and [was] unable to recall conversations[,]" even those from earlier the same day. Tr. 231. She observed that plaintiff "was unable to remember where places were: for example, the post office in Sherwood where we went for 12–13 years or even job sites he was working on at the time." *Id.* She stated plaintiff "became unable to complete tasks because he was unable to remember the sequence of steps." *Id.* She also stated plaintiff "began to exhibit childlike behaviors" such as waving at dogs and using both hands to wave at people. *Id.*

Ms. Jurgens also testified at the June 11, 2013, hearing. Tr. 35–42. The ALJ asked Ms. Jurgens whether plaintiff's account was accurate that his cognitive problems began after an episode that occurred in 2011 and Ms. Jurgens replied "No, that is not. That episode happened late summer, early fall of 2008." Tr. 38–39. The remainder of her hearing testimony centered around plaintiff's work history and the reason for the lack of medical evidence. Tr. 35–42.

In his decision, the ALJ briefly discussed Ms. Jurgens' testimony regarding plaintiff's last job and the reason for the lack of medical evidence. Tr. 21. He also stated,

> Ms. Jurgens reports she began noticing significant personality changes in 2008. He was easily confused and forgetful and started to isolate. From 2008 to the end of 2010, he was unable to focus or recall conversations. He could not make simple decisions or complete tasks. He began to exhibit childlike behaviors.

*Id.* The ALJ then wrote, "The allegations of the claimant's spouse are not sufficient to establish a medically determinable impairment in the absence of any medical signs or laboratory findings. There is no medical evidence of anatomical, physiological, or psychological abnormalities on or prior to his date last insured." *Id.* Because the ALJ found "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment" during the relevant time period, the ALJ concluded plaintiff was not under a disability. Tr. 21–22.

As noted, an impairment must result from anatomical, physiological, or psychological abnormalities shown by medically acceptable clinical and laboratory diagnostic techniques. Plaintiff's wife's lay testimony regarding plaintiff's symptoms was not a medically acceptable clinical or laboratory diagnostic technique. The ALJ found "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." Tr. 20 (citation omitted). Where the ALJ concludes there are "no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 . . . ." SSR 96-4p, 61 Fed. Reg. at 34489. Ms. Jurgens' lay testimony regarding plaintiff's symptoms had no effect on the ALJ's finding that there was no objective medical evidence to establish plaintiff's alleged impairments. In addition, because the ALJ found no evidence of impairment, there was no need to consider the severity of an impairment or

Page 9 - FINDINGS AND RECOMMENDATION

how an impairment affects plaintiff's ability to work, which are the subjects about which Ms. Jurgens testified. *See* 20 C.F.R. § 404.1513(d). The ALJ did not err by not considering Ms. Jurgens' lay testimony on plaintiff's symptoms and limitations.

III.     Medical Expert Testimony Regarding Onset Date

Plaintiff lastly argues the ALJ erred by failing to call a medical expert to testify regarding the onset of his disability. Defendant replies that the ALJ's finding that plaintiff was not disabled was supported by substantial evidence in the record and because plaintiff was not under a disability, there was no need to determine the onset date.

SSR 83-20 governs the Commissioner's policy and the evidence to be considered when establishing the onset date of disability. SSR 83-20, 1983 WL 31249 (1983). It states, "Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence[, which] serves as the primary element in the onset determination." *Id.* at *1. When the date alleged by the individual is consistent with the evidence available, then SSR 83-20 states that date "should be used[,]" but "[w]hen the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy." *Id.* at *3 "At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred." *Id.* The onset may occur "some time prior to the date of the first recorded medical examination" but "must be fixed based on the facts[, ] can never be inconsistent with the medical evidence of record[, and] must have a legitimate medical basis." *Id.* at *3–4.

The Ninth Circuit has held SSR 83-20 applicable when there is a clear record of impairment but it is unclear when that impairment became disabling. *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998). It has also found SSR 83-20 to apply when there are medical

records prior to the DLI but the impairment is not precisely diagnosed until after the DLI. *Morgan v. Sullivan*, 945 F.2d 1079, 1082–83 (9th Cir. 1991) (per curiam); *DeLorme v. Sullivan*, 924 F.2d 841, 848–49 (9th Cir. 1991). By contrast, the Ninth Circuit has held "that SSR 83-20 does not require a medical expert where the ALJ explicitly finds that the claimant has *never* been disabled . . . ." *Sam v. Astrue*, 550 F.3d 808, 809 (9th Cir. 2008) (per curiam) (emphasis added).

Here, the ALJ found "[t]hrough the date last insured, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment[,]" and therefore plaintiff "was not under a disability, as defined in the Social Security Act, at any time from July 1, 2010, the alleged onset date, through December 31, 2010, the date last insured . . . ." Tr. 21–22. Because the ALJ found no evidence of an impairment, he was not required to determine the onset date of a disability. SSR 83-20 was not implicated and the ALJ did not err by not calling a medical expert to testify at the June 11, 2013 hearing.

## RECOMMENDATION

For the foregoing reasons, the Commissioner's decision should be AFFIRMED and this case should be DISMISSED.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due within 14 days. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

DATED this _11th_ day of _May_, 2015.

                                        ___/s/ Patricia Sullivan_____
                                        Patricia Sullivan
                                        United States Magistrate Judge